# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

CHRISTOPHER J. POTTER,               )
                                      )
        Plaintiff,               )
                                      )
    v.                           )          No. 4:18-cv-235-AGF
                                      )
NICHOLAS LINEBACK, et al.,            )
                                      )
        Defendants.             )

## <u>MEMORANDUM AND ORDER</u>

This matter is before the Court upon review of a second amended complaint filed by plaintiff Christopher J. Potter, a prisoner who is proceeding *pro se* and *in forma pauperis*. For the reasons explained below, the Court will dismiss this action without prejudice.

### Background

Plaintiff initiated this action while he was a pretrial detainee at the St. Charles County Department of Corrections.[1] He filed a complaint pursuant to 42 U.S.C. § 1983 against twenty-six law enforcement officers, two prosecuting attorneys, the Warren County Sheriff's Department, St. Charles County and St. Charles City, and the sheriffs of St. Charles County and Warren County. After filing the complaint, plaintiff filed additional documents, including documents purporting to amend the complaint. Upon initial review of the complaint and the later-filed documents, the Court determined that the complaint was deficient and subject to dismissal, and that plaintiff had

---

[1] At the time he filed the original complaint, plaintiff was a defendant in one criminal case pending in St. Charles County Circuit Court, and in two criminal cases pending in Warren County Circuit Court. In *State v. Christopher Jacob Potter*, No. 1611-CR03563-01 (11th Jud. Cir. 2016), plaintiff was charged with multiple counts of first-degree assault, leaving the scene of a motor vehicle accident, and first-degree property damage. In *State v. Christopher Potter*, No. 16BB-CR00753-01 (12th Jud. Cir. 2016), plaintiff was charged with first degree tampering with a motor vehicle. In *State v. Christopher Potter*, No. 16BB-CR00559-01 (12th Jud. Cir. 2017), plaintiff was charged with first degree assault.

expressed the desire to amend it. The Court entered an order giving plaintiff the opportunity to file an amended complaint. In that order, the Court gave plaintiff clear instructions about how to prepare the amended complaint, stressing the importance of alleging facts showing what each named defendant did to violate his constitutional rights.

Plaintiff filed an amended complaint against many of the same defendants he named in the original complaint. Those defendants were law enforcement officers Nicholas Lineback, Fred Statler, Mike Marshall, Scott Ginnever, Joe McKinney, Scott Schoenfeld, Kevin Talir, E. Graslie, Shane Fineran, Ross Bishop, Unknown Moore, and Gary Swartz, and prosecuting attorneys Kelly L. King, Dulany Reese Harms, Patrick McCool, and Catherine Hoag. Plaintiff alleged that Lineback falsely arrested him and punched him in order to elicit his false confession. Plaintiff claimed the other defendants violated his constitutional rights by engaging in unconstitutional conduct that caused him to be falsely charged and wrongfully prosecuted. He also alleged his *Miranda*[2] rights were violated. On September 10, 2018, the Court dismissed many of plaintiff's claims against certain defendants after determining that plaintiff had failed to allege facts showing they engaged in wrongdoing. The Court also dismissed plaintiff's claims against the prosecuting attorneys on the basis of prosecutorial immunity, and dismissed plaintiff's claims that were based upon alleged violations of his *Miranda* rights. Finally, the Court determined that the principles of *Wallace v. Kato*[3] dictated that further consideration of plaintiff's remaining Fourth Amendment claims should be stayed until the resolution of the underlying criminal proceedings against him, and entered an order to that effect. In that order, the Court specified that despite the ruling, plaintiff

---

[2] *Miranda v. Arizona,* 384 U.S. 436 (1966)
[3] 549 U.S. 384 (2007)

remained free to file a separate action to bring claims of excessive force against Lineback, should he wish to do so.

On May 24, 2019, plaintiff filed a motion seeking to reopen this case. Therein, he advised that all three of his state court criminal cases were adjudicated, in that he was convicted in one case and entered "*Alford*" guilty pleas[4] in the other two cases.[5] He also sought leave to file a second amended complaint. The Court entered an order directing plaintiff to file a second amended complaint, again giving him clear instructions about how to prepare the second amended complaint that stressed the importance of alleging facts showing what each defendant did to violate his rights. Plaintiff has now filed a second amended complaint, which the Court reviews pursuant to 28 U.S.C. § 1915(e)(2).

## Legal Standard on Initial Review

Under 28 U.S.C. § 1915(e)(2), this Court is required to dismiss a complaint filed *in forma pauperis* if it is frivolous, malicious, or fails to state a claim upon which relief may be granted. To determine whether an action states a claim upon which relief can be granted, the Court engages in a two-step inquiry. First, the Court determines whether the allegations in the complaint are entitled to the assumption of truth. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Allegations are not entitled

---

[4] *See North Carolina v. Alford*, 400 U.S. 25 (1970).

[5] In *State v. Christopher Potter*, No. 1611-CR03563-01 (11th Jud. Cir. 2016), a jury convicted plaintiff on December 17, 2018 of eight counts of first-degree assault. In *State v. Christopher Potter*, No. 16BB-CR00559-01 (12th Jud. Cir. 2016), plaintiff entered an *Alford* plea on April 5, 2019 to first-degree assault. In *State v. Christopher Potter*, No. 16BB-CR00753-01 (12th Jud. Cir. 2016), plaintiff entered an *Alford* plea on April 8, 2019 to first-degree tampering with a motor vehicle. Plaintiff is presently serving sentences totaling 21 years. Review of the publicly-available court documents shows the offense conduct to include operating a Ford F-350 truck to aggressively tailgate other vehicles and purposefully strike them, causing the other drivers to lose control of their vehicles and run off the road. The Court includes this information to give context to some of the claims plaintiff presents in the case at bar. This Court takes judicial notice of the Missouri State Court record before it, as obtained through the public records published on Missouri Case.net. *See Levy v. Ohl,* 477 F.3d 988 (8th Cir. 2007) (district court may take judicial notice of public state records); *Stutzka v. McCarville*, 420 F.3d 757, 760 n. 2 (8th Cir. 2005) (courts "may take judicial notice of judicial opinions and public records.").

to the assumption of truth if they are merely "legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action [that are] supported by mere conclusory statements." *Id.* at 678. Second, the Court determines whether the complaint contains sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

A claim is plausible on its face where "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *id.*, and "raise[s] a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Where the well-pleaded facts do not permit the inference of more than the "mere possibility of misconduct," the complaint has alleged, but has not shown, that the pleader is entitled to relief. *Iqbal,* 556 U.S. at 679 (citing Fed. R. Civ. P. 8(a)(2)); *see also Twombly,* 550 U.S. at 557 (if the well-pleaded facts are merely consistent with wrongdoing, the complaint stops short of the line between possibility and plausibility). Determining whether a complaint states a plausible claim is a context-specific task that requires the court to draw upon judicial experience and common sense. *Iqbal,* 556 U.S. at 679.

This Court must liberally construe complaints filed by laypeople. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). This means that "if the essence of an allegation is discernible," the court should "construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015) (quoting *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004)). However, even *pro se* complaints must allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980). Federal courts are not required to assume facts that are not alleged, *Stone*, 364

F.3d at 914-15, nor are they required to interpret procedural rules so as to excuse mistakes by those who proceed without counsel. *See McNeil v. United States,* 508 U.S. 106, 113 (1993).

## The Second Amended Complaint

In the second amended complaint, plaintiff asserts numerous claims against a total of twelve defendants, all of whom were involved in his State court criminal proceedings.

Plaintiff begins by identifying each defendant by name and occupation, and stating the capacity in which he or she is sued. Plaintiff sues the following seven defendants in their individual and official capacities: James Michael Johnson (witness for the St. Charles County Prosecuting Attorney's Office); Nicholas Lineback (St. Charles County Police Officer); Amy Buettner (St. Charles County Crime Scene Investigator); Scott Schoenfeld (Warren County Police Detective); Eric Graslie and Brent Moore (Missouri State Highway Patrol Troopers); and Gary Swartz (Missouri State Highway Patrol Master Sergeant). Plaintiff sues the following five defendants in their official capacities: Kelly King (Warren County Prosecuting Attorney); Timothy Lohmar (the Prosecuting Attorney for St. Charles); Patrick McCool (Assistant Prosecuting Attorney in St. Charles); Judge Mike Wright (Warren County Associate Circuit Judge) and Judge Ted House (St. Charles County Circuit Judge). Plaintiff's claims and his allegations in support are as follows.

Johnson violated plaintiff's Sixth Amendment right to a fair trial by committing perjury and changing his testimony during plaintiff's December 2018 trial "to avoid himself being found out to be the true actor of the crimes that I was charged and convicted of." (ECF No. 27 at 5). Plaintiff alleges that without this perjured testimony, he would have been found not guilty on all criminal charges in St. Charles and Warren Counties.

McCool violated plaintiff's Sixth Amendment right to a fair trial by having his former girlfriend Mary testify to impeach Kristi McEntee, plaintiff's alibi witness. King violated

plaintiff's Sixth Amendment right to a speedy trial by continuing the trial date without his consent and purposefully delaying court proceedings. King violated plaintiff's Fourth Amendment rights by threatening him into taking *Alford* pleas because she knew she had insufficient evidence to convict him. McCool and Lohmar wrongfully charged plaintiff with criminal offenses because the evidence was insufficient, they knew plaintiff was innocent, and they only cared about their conviction rate.

Judge House "showed levels of prejudice" towards plaintiff because plaintiff filed a lawsuit alleging police misconduct. *Id.* at 4. Judge House also violated plaintiff's First, Fifth, Sixth, and Eighth Amendment rights when he sentenced plaintiff to extra time – which plaintiff calls a "trial tax" – even though he knew plaintiff was innocent. *Id.* at 7. Plaintiff alleges that Judge House did this at least in part because plaintiff sued law enforcement officers for misconduct and exercised his right to go to trial. Judge House also required plaintiff to state his name even though plaintiff exercised his right to not testify, and in April 2019 Judge House asked plaintiff questions even after plaintiff said he wished to remain silent.

Plaintiff also claims that prosecuting attorneys and judges conspired against him. Specifically, he claims King and Judge Wright engaged in a civil conspiracy to wrongfully convict him and cause him emotional distress, and that they met several times to plan this conspiracy. McCool, Lohmar, House and Jackson engaged in a civil conspiracy to wrongfully convict plaintiff of multiple counts of first-degree assault, even though they knew he was innocent and that the conduct alleged amounted only to second-degree assault. These defendants met multiple times in Lohmar's office to "discuss the conspiracy of having me wrongfully convicted." *Id.* at 5.

Next, plaintiff sets forth the following claims against the law enforcement officer defendants. Lineback violated plaintiff's Fourth and Eighth Amendment rights by illegally

searching and seizing him and his truck, punching him to elicit his false confession, and pointing an assault rifle at him during the course of a traffic stop. Lineback also violated plaintiff's Fourth Amendment rights by setting up surveillance on Cappeln Osage Road, a road near his house. On July 5, 2016, Lineback "performed an unlawful traffic stop that resulted in an illegal arrest with the use of excessive force that lead to a false confession" from plaintiff. *Id.* at 3. Plaintiff alleges the traffic stop was unlawful because Lineback used plaintiff's failure to use his turn signal as an excuse to stop his vehicle. Also on July 5, 2016, "Lineback, Buettner and Schoenfeld had [plaintiff's] 1997 White Ford F-350 truck illegally seized and conducted an illegal search of my truck" without his consent or a warrant. *Id.* Lineback also violated plaintiff's due process rights when plaintiff "requested to have a lawyer multiple times while at the police station." *Id.* at 6. Lineback, Buettner and Schoenfeld committed "civil conspiracy" prior to plaintiff's traffic stop to get him away from his truck "to illegally impound my truck to plant tainted evidence onto my truck." *Id.*

Graslie violated plaintiff's Fifth Amendment right to be free from self-incrimination when he harassed him and conducted questioning that led to his false confession even though he knew plaintiff had an attorney and wished to remain silent. However, plaintiff avers the statements that were elicited were suppressed. Graslie also filed "false police reports." *Id.* at 7.

Moore and Swartz violated plaintiff's Fourth Amendment rights when they "trespassed onto my property to conduct an illegal search of my 1997 Ford F350," and Schoenfeld "provided the courts of St. Charles County and Warren County false police reports and perjured testimony during the December 2018 trial in St. Charles County" by "providing the jury false information." *Id.* at 5, 7.

In setting forth his prayer for relief, plaintiff avers that being wrongfully accused and convicted caused him to lose his job and time with his family, and damaged his reputation. He asks this Court to enter an order exonerating him of all charges, directing that his truck be returned to him, and granting him "immunity from Warren County police, St. Charles County police, and Missouri State Highway Patrol." *Id.* at 8. He also seeks monetary relief to compensate him for the emotional distress and damage to reputation caused by being falsely arrested and imprisoned.

After filing the second amended complaint, plaintiff filed a motion seeking the appointment of counsel (ECF No. 28), a motion titled "Motion to Order Alibi Witness Deposition of Kristi McEntee," (ECF No. 29) and a motion titled "Preliminary Injunction." (ECF No. 30). In the second motion, plaintiff stated he filed it "for this Court to receive a copy of Kristi McEntee Deposition from the St. Charles County Court to support not only my claim, but to also support my "Preliminary Injunction" that is with this motion." (ECF No. 29). In the motion titled "Preliminary Injunction," plaintiff asks this Court to "[o]rder Warren County and St. Charles County to dismiss with prejudice, all criminal charges from my criminal cases" because in the case at bar he is "continuing to prove my innocence in all criminal charges." (ECF No. 30). He also asks this Court to order Warren County and St. Charles County to return his truck.

**Discussion**

### A.     Witness Johnson

Plaintiff identifies Johnson as a witness called by the St. Charles County Prosecuting Attorney's Office. He claims Johnson violated his Sixth Amendment rights when testifying at plaintiff's trial. Plaintiff's claim against Johnson will be dismissed. To state a claim under 42 U.S.C. § 1983, a plaintiff must establish: (1) the violation of a right secured by the Constitution or laws of the United States, and (2) that the alleged deprivation of that right was committed by a

person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988). Here, plaintiff's allegations do not establish that Johnson was a state actor. Instead, they establish Johnson was a private citizen who spoke to the police and later testified at plaintiff's trial. Speaking to the police did not transform Johnson into a state actor. *See Miller v. Compton*, 122 F.3d 1094, 1098 (8th Cir. 1997). Additionally, Johnson is absolutely immune from suit under § 1983 for giving testimony at trial, even if that testimony is alleged to have been false or damaging to plaintiff. *Briscoe v. LaHue*, 460 U.S. 325, 329-30 (1983) (a witness at trial has absolute immunity from suit under § 1983 for giving false testimony damaging to a subject of that testimony); *see also Conley v. Office of Public Defender, Sixth Judicial Dist. of Arkansas, Pulaski and Perry Counties*, 653 F.2d 1241, 1242 (8th Cir. 1981) ("Witnesses are absolutely immune from section 1983 remedy actions arising from their testimony in judicial proceedings.").

## B. Prosecuting Attorneys King, McCool, and Lohmar

Plaintiff claims that King, McCool and Lohmar violated his constitutional rights by calling a certain witness, delaying criminal proceedings, threatening him into taking an *Alford* plea, wrongfully charging him with criminal offenses, and conspiring with others to wrongfully charge and convict him. These claims will be dismissed. Prosecutors are "absolutely immune from liability under § 1983 for their conduct in 'initiating a prosecution and in presenting the State's case' insofar as that conduct is 'intimately associated with the judicial phase of the criminal process.'" *Woodworth v. Hulshof,* 891 F.3d 1083, 1089 (8th Cir. 2018) (quoting *Burns v. Reed,* 500 U.S. 478, 486 (1991)); *see also Imbler v. Pachtman*, 424 U.S. 409, 430–31 (1976) (prosecutors are absolutely immune from civil rights claims based on actions taken while initiating and pursuing a criminal prosecution). Here, all of the allegedly unconstitutional conduct of King, McCool and Lohmar falls within the scope of initiating a criminal prosecution and presenting the State's case during the judicial phase of the criminal process against plaintiff. They are therefore immune from

suit. Plaintiff's allegations of a conspiracy do not defeat their absolute immunity. A prosecutor is absolutely immune from a conspiracy charge when, as here, his or her alleged participation in the conspiracy consists of otherwise immune acts. *Reasonover v. St. Louis County, Mo.*, 447 F.3d 569, 580 (8th Cir. 2006). Similarly, plaintiff's allegation that these defendants acted with improper motives does not defeat their immunity. *See id.* (immunity is not defeated by allegations of malice, vindictiveness, or self-interest), *Imbler*, 424 U.S. at 427-28 (there is no fraud exception to prosecutorial immunity).

### C.    Judges Wright and House

Plaintiff alleges that Judge Wright persisted in questioning him after he stated his intent to remain silent, and that Judge House was prejudiced against him, sentenced him to excessive time, and required him to state his name even though he stated his intent to remain silent. Plaintiff also alleges that Judges Wright and House engaged in a conspiracy with other defendants to wrongfully convict him. These claims will be dismissed. Judges are absolutely immune from civil lawsuits based on alleged judicial misconduct. *Imbler*, 424 U.S. at 434-35 (citing *Pierson v. Ray*, 386 U.S. 547 (1967)). This judicial immunity is subject to two exceptions: (1) when a judge does not act within his judicial capacity, or (2) when a judge takes judicial action in the absence of jurisdiction. *Mireles v. Waco*, 502 U.S. 9, 11-12 (1991). "[W]hether an act by a judge is a 'judicial' one relate[s] to the nature of the act itself, i.e., whether it is a function normally performed by a judge, and to the expectations of the parties, i.e., whether they dealt with the judge in his judicial capacity." *Id.* at 12.

Here, the allegedly unlawful actions of Judges Wright and House were judicial in nature. Plaintiff was a criminal defendant in cases over which Judges Wright and House presided, and he therefore dealt with them in their judicial capacities. Finally, Judge Wright was acting as an Associate Circuit Judge in the 12th Judicial Circuit Court and Judge House was acting as a Circuit

Judge in the 11th Judicial Circuit Court, and they took judicial action pursuant to the jurisdiction granted by the Missouri Constitution. *See* Mo. Const. art V. Because the allegedly wrongful acts of Judges Wright and House were done within their judicial capacities and with proper jurisdiction, they are absolutely immune from suit.

### D. Law Enforcement Officers Lineback, Buettner, Schoenfeld, Graslie, Moore and Swartz

Plaintiff's official capacity claims against the law enforcement officer defendants will be dismissed. Naming a government official in his or her official capacity is the equivalent of naming the governmental entity that employs him or her. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989); *see also White v. Jackson*, 865 F.3d 1064, 1075 (8th Cir. 2017) (in an official capacity claim against an individual, the claim is actually "against the governmental entity itself."). Here, Lineback, Buettner and Schoenfeld are employed by municipal police departments, which are not suable entities under § 1983. *See Ketchum v. City of West Memphis, Ark.*, 974 F.2d 81, 82 (1992). Additionally, the second amended complaint would not state a claim of municipal liability because it fails to allege a direct causal link between a municipal policy or custom and the alleged constitutional violations. *See Monell v. Dept. of Social Services of City of New York*, 436 U.S. 658, 690-91 (1978). Graslie, Moore and Swartz are employed by the Missouri State Highway Patrol. The Missouri State Highway Patrol is a State agency entitled to Eleventh Amendment immunity. *Leigh v. State of Mo. Highway Patrol,* 2007 WL 869508, at *2 (W.D. Mo. Mar. 20, 2007). Indeed, in *Will,* the Supreme Court determined that the Eleventh Amendment precluded a § 1983 suit from proceeding against a State police department and its director sued in his official capacity. Here, any judgment against Graslie, Moore or Swartz would be a judgment against the Missouri State Highway Patrol, in violation of the Eleventh Amendment, and plaintiff does not seek any relief which could be characterized as non-frivolous prayer for prospective injunctive relief.

Accordingly, the Court determines that plaintiff fails to state an official-capacity claim against any of the law enforcement officer defendants. The Court will now address plaintiff's individual capacity claims against these defendants.

Plaintiff claims that Lineback engaged in various forms of conduct that violated his Fourth Amendment rights. The Fourth Amendment protects "personal privacy and dignity against unwarranted intrusion by the State." *Schmerber v. California*, 384 U.S. 757, 767 (1966). It prohibits violation of the right of the people to be secure "in their persons, houses, papers, and effects" and "against unreasonable searches and seizures," and it provides that no warrants shall issue except upon probable cause. U.S. CONST. amend. 4. It also protects citizens from being seized through excessive force by law enforcement officers. *Thompson v. City of Monticello, Ark.*, 894 F.3d 993, 998 (8th Cir. 2018). The Fourteenth Amendment extends this constitutional guarantee to searches and seizures by state officers. *Burlison v. Springfield Public Schools*, 708 F.3d 1034, 1039 (8th Cir. 2013).

Plaintiff claims that Lineback violated his Fourth Amendment rights when he "set up surveillance on Cappeln Osage Rd, about a mile from my house." (ECF No. 27 at 6). These allegations do not state a claim under the Fourth Amendment. Plaintiff does not allege he had a legal interest in Cappeln Osage Road itself, only that it was near his home. Plaintiff alleges no facts concerning the nature of the surveillance, and instead merely complains that surveillance was conducted on a road near his house. However, plaintiff had no reasonable expectation of privacy in his movements while traveling in a vehicle on public roads from one place to another. *United States v. Knotts,* 460 U.S. 276, 281 (1983). His allegations therefore fail to state a claim under the Fourth Amendment.

Next, plaintiff claims that Lineback violated his Fourth Amendment rights by conducting an illegal traffic stop. In support, he alleges that Lineback used plaintiff's failure to use his turn signal as an excuse to pull him over. Plaintiff does not allege that he did not commit a traffic violation; only that Lineback used that traffic violation as a pretext to stop him. These allegations fail to state a claim under the Fourth Amendment. A traffic stop is legal under the Fourth Amendment if it is supported by probable cause to believe that a violation of the law has occurred. *Whren v. United States,* 517 U.S. 806, 810 (1996); *see also PPS, Inc. v. Faulkner County, Ark*., 630 F.3d 1098, 1107 (8th Cir. 2011). Any traffic violation, even a minor one, creates probable cause for an officer to stop a vehicle. *See United States v. Gregory*, 302 F.3d 805, 809 (8th Cir. 2002). Here, taking plaintiff's allegations as true, they establish that he committed a traffic violation. It was therefore legal for Lineback to stop his vehicle.

Next, plaintiff claims that Lineback illegally arrested him on July 5, 2016. This claim is barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). There, the Supreme Court held that a prisoner may not recover damages in a § 1983 suit where the judgment would necessarily imply the invalidity of his convictions, continued imprisonment, or sentences unless the convictions or sentences have been reversed, expunged, or called into question by issuance of a writ of habeas corpus. *Id.* at 486-87; *Schafer v. Moore*, 46 F.3d 43, 45 (8th Cir. 1995); *Edwards v. Balisok*, 520 U.S. 641, 648 (1997) (applying rule in § 1983 suit seeking declaratory relief). Any guilty plea, including an *Alford* plea, results in a conviction, *U.S. v. Salean*, 583 F.3d 1059, 1061 n.3 (8th Cir. 2009), and "the Heck doctrine derives from the existence of a valid conviction, not the mechanism by which the conviction was obtained." *Havens v. Johnson*, 783 F.3d 776, 784 (10th Cir. 2015)*; see also Ballard v. Burton*, 444 F.3d 391, 397 (5th Cir. 2006) ("[W]e hold that a conviction based on an *Alford* plea can be used to impose *Heck's* favorable termination rule."). Here, a judgment in

plaintiff's favor on any claim of false arrest would necessarily imply the invalidity of his convictions, sentences, or continued imprisonment, and plaintiff has not shown that his convictions or sentences have been reversed, expunged, or called into question by issuance of a writ of habeas corpus. His false arrest claim is therefore barred by *Heck*.

Even if plaintiff's false arrest claim was not *Heck*-barred, it would be barred by the doctrine of collateral estoppel. Collateral estoppel applies when a § 1983 plaintiff attempts to relitigate in federal court issues that were decided against him in a state criminal proceeding. *Munz v. Parr,* 972 F.2d 971, 973 (8th Cir. 1992). "[T]he Supreme Court has made clear that collateral estoppel applies to section 1983 actions involving alleged Fourth Amendment violations." *Id.* (citing *Allen v. McCurry,* 449 U.S. 90, 92, 96-104 (1980)). Here, the record in *State v. Potter,* No. 1611-CR03563-01 (11th Jud. Cir. 2016) shows that the State court denied plaintiff's June 12, 2018 Amended Motion to Suppress Evidence in which he argued, *inter alia*, that his person was illegally seized and he was illegally arrested on July 5, 2016. Collateral estoppel therefore bars his attempt to relitigate the issue here.

Next, plaintiff claims his Fourth Amendment rights were violated when Lineback, Schoenfeld, and Buettner illegally seized and/or illegally searched his truck on July 5, 2018. These claims are also barred by the doctrine of collateral estoppel. The record in *State v. Potter,* No. 1611-CR03563-01 (11th Jud. Cir. 2016) shows that the State court denied plaintiff's June 12, 2018 Amended Motion to Suppress Evidence in which he argued, *inter alia*, that his truck was illegally seized and illegally searched on that date. *See Munz,* 972 F.2d at 973 (collateral estoppel applies when a § 1983 plaintiff attempts to relitigate in federal court issues that were decided against him in a state criminal proceeding); *see also Allen,* 449 U.S. at 92, 96-104 (collateral estoppel applies to § 1983 actions involving alleged Fourth Amendment violations). Additionally, to the extent

plaintiff can be understood to claim that the allegedly unconstitutional conduct yielded excludable evidence that was then used to secure his convictions, such claims would necessarily imply the invalidity of his convictions and continued imprisonment, and plaintiff has not demonstrated that any of his convictions have been reversed, expunged, or called into question by issuance of a writ of habeas corpus. Such claims would therefore be *Heck*-barred. *See Heck*, 512 U.S. 477.

Plaintiff also claims that Swartz and Moore violated his Fourth Amendment rights when they "trespassed onto my property to conduct an illegal search of my 1997 Ford F350;" that Graslie and Schoenfeld filed false police reports; and that Schoenfeld perjured himself during plaintiff's trial. (ECF No. 27 at 7). These allegations are nothing more than the "the defendant unlawfully harmed me" accusations that the Supreme Court has found deficient. *See Iqbal*, 556 U.S. at 678. The Court has repeatedly advised plaintiff of the necessity of alleging specific facts in support of his claims, and will not assume facts that have not been alleged. *See Stone*, 364 F.3d at 914-15. Additionally, to the extent plaintiff can be understood to claim that the allegedly unconstitutional conduct yielded excludable evidence or otherwise resulted in his convictions, such claims would necessarily imply the invalidity of his convictions and continued imprisonment, and plaintiff has not demonstrated that any of his convictions have been reversed, expunged, declared invalid, or called into question by issuance of a writ of habeas corpus. Such claims would therefore be *Heck*-barred. *See Heck*, 512 U.S. 477.

Next, plaintiff claims that Lineback used excessive force in violation of his Eighth Amendment rights when he (1) "used excessive force by punching me, while in the back seat of a police car and at the police station to get me to falsely confess to 2 car accidents," and (2) "pointed his assault rifle at me, while performing a routine traffic stop." (ECF No. 27 at 6).

Plaintiff was an arrestee at the time of Lineback's allegedly wrongful conduct. Therefore, his excessive force claims arise under the Fourth Amendment, not the Eighth Amendment. The Fourth Amendment protects citizens from being seized through excessive force by law enforcement officers. *Thompson*, 894 F.3d at 998; *see also Andrews v. Fuoss*, 417 F.3d 813, 818 (8th Cir. 2005) ("The right to be free from excessive force is included under the Fourth Amendment's prohibition against unreasonable seizures of the person").

Whether force is excessive under the Fourth Amendment requires a determination of whether the law enforcement officer's conduct was "objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Ellison v. Lesher*, 796 F.3d 910, 916 (8th Cir. 2015). Factors that are relevant to the reasonableness of an officer's conduct include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Burnikel v. Fong*, 886 F.3d 706, 710 (8th Cir. 2018).[6]

Here, plaintiff's allegations that Lineback pointed an assault rifle at him during the traffic stop are insufficient to state a claim under the Fourth Amendment. The fact that Lineback pointed the rifle does not alone establish that he used excessive force, and plaintiff fails to allege facts permitting the inference that he was cooperative, posing no threat, and not attempting to flee when Lineback pointed the rifle. Additionally, as noted above, plaintiff was charged with, and ultimately convicted of, serious crimes that threatened the lives and safety of others. It therefore cannot be said that plaintiff has adequately pled facts permitting the inference that Lineback used more force

---

[6] Even if it could be said that plaintiff was a pretrial detainee at the time of any of the alleged excessive force, courts generally analyze excessive force claims of pretrial detainees in the same way as those of arrestees. *Andrews v. Neer*, 253 F.3d 1052, 1060 (8th Cir. 2001) ("The evaluation of excessive-force claims brought by pre-trial detainees, although grounded in the Fifth and Fourteenth Amendments rather than the Fourth Amendment, also relies on an objective reasonableness standard.").

than was reasonably necessary in light of the facts and circumstances existing during the traffic stop. The Court has repeatedly advised plaintiff of the necessity of alleging specific facts in support of his claims, and will not assume facts that have not been alleged. *See Stone*, 364 F.3d at 914-15.

Next, plaintiff alleges that Lineback used excessive force when he punched him when he was in the back of the police car, and when he was at the police station. Plaintiff can be understood to claim that this conduct amounted to a seizure through the use of excessive force, and obtaining a false confession through the use of excessive force. The Court will first consider whether Lineback's conduct amounted to a seizure through the use of excessive force, in violation of the Fourth Amendment.

As above, the fact that Lineback punched plaintiff does not alone establish that he used excessive force to arrest him, and plaintiff alleges nothing about his own behavior or the surrounding circumstances that would permit the inference that Lineback's use of force was objectively unreasonable. Also as noted above, plaintiff was charged with committing serious violent crimes. It therefore cannot be said that plaintiff has alleged sufficient facts tending to show that Lineback used more force than was reasonably necessary in light of the facts and circumstances existing at the time plaintiff was in the police car and at the police station. As noted above, this Court has repeatedly cautioned plaintiff about the necessity of alleging specific facts in support of his claims, and will not assume facts that plaintiff has not alleged. Additionally, plaintiff does not allege he suffered any injury as a result of Lineback's conduct. While not alone dispositive, the lack of any injury tends to show that Lineback used no more than *de minimis* force, which does not support an excessive force claim. *See Chambers v. Pennycook,* 641 F.3d 898, 906 (8th Cir. 2011).

Next, plaintiff alleges that Lineback violated his Eighth Amendment rights when he punched him to coerce his false confession. The Court construes this claim as a substantive due process claim. *See Sheets v. Butera*, 389 F.3d 772, 778 (8th Cir. 2004) (construing the plaintiff's claims that officers engaged in behavior that coerced his confession as substantive due process claims). In determining whether a substantive right protected by the Due Process Clause has been violated, courts balance the liberty of the individual and the demands of an organized society. *Id.* (internal quotation and citation omitted). The ultimate inquiry is whether the government's contested actions shock the conscience. *Id.*

"In reviewing police tactics to obtain a confession under the Due Process Clause, we focus on the crucial element of police overreaching." *Id.* However, even though the police use overreaching tactics such as the use of threats or violence, such tactics will not render the confession involuntary unless it is shown that they overcame the defendant's free will and impaired his capacity for self-determination. *Id.* Relevant to the inquiry is the degree of police coercion, the length of the interrogation, its location, its continuity, and the defendants' maturity, education, and physical and mental condition. *Id.*.

Here, plaintiff alleges that Lineback punched him twice: when he was in the police car and when he was at the police station. However, plaintiff does not allege he was injured as a result, nor does he describe the surrounding circumstances to permit the inference that Lineback's conduct amounted to police overreaching. Even assuming that Lineback's conduct did amount to police overreaching, plaintiff alleges nothing from which the Court can infer that Lineback's conduct overcame his free will and impaired his capacity for self-determination. He therefore fails to state a viable substantive due process claim. To the extent plaintiff can be understood to claim that Lineback violated his Fifth Amendment right to be free from self-incrimination, he fails to state a

claim upon which relief may be granted because he does not allege that a statement compelled by Lineback was used against him at his criminal trial. *See Entzi v. Redmann,* 485 F.3d 998, 1002 (8th Cir. 2007) ("the general rule is that a person has no claim for civil liability based on the Fifth Amendment's guarantee against compelled self-incrimination unless compelled statements are admitted against him in a criminal case.").

Plaintiff alleges that Graslie violated his Fifth Amendment right against self-incrimination when he harassed him on July 24, 2016 even though he had an attorney and wished to remain silent. As above, plaintiff fails to allege that a statement compelled by Graslie was used against him at his criminal trial. He therefore fails to state a claim based upon the Fifth Amendment's guarantee against compelled self-incrimination. *See id.* To the extent plaintiff's claim against Graslie can be construed as arising under the Due Process Clause, plaintiff fails to allege sufficient facts from which the Court could reasonably infer that Graslie engaged in conduct that overcame plaintiff's free will and impaired his capacity for self-determination.

Plaintiff also claims that Lineback and Graslie engaged in conduct that violated his *Miranda* rights. However, plaintiff cannot maintain an action under § 1983 based upon violations of the *Miranda* safeguards. Instead, such issues must be addressed in a criminal proceeding. *See Hannon v. Sanner*, 441 F.3d 635, 636 (8th Cir. 2006) (remedy for violations of *Miranda* safeguards is suppression of evidence, not a § 1983 action).

Plaintiff also claims that Lineback, Buettner and Schoenfeld "committed the act of 'Civil Conspiracy'" before his traffic stop in order to illegally seize his truck and plant evidence on it. (ECF No. 27 at 6). This claim will be dismissed. To prevail on a § 1983 claim for conspiracy, a plaintiff must allege, *inter alia*, the deprivation of a constitutional right or privilege. *Askew v. Millerd*, 191 F.3d 953, 958 (8th Cir. 1999) (internal citation omitted). Here, as discussed above,

plaintiff's allegations fall short of alleging any constitutional violation. He therefore cannot maintain a § 1983 conspiracy claim. Even if plaintiff had successfully alleged a constitutional violation, his § 1983 conspiracy claim would fail. Allegations of conspiracy must be pled with sufficient specificity and factual support to suggest a "meeting of the minds." *Manis v. Sterling*, 862 F.2d 679, 681 (8th Cir. 1988). Plaintiff herein has not done so, and he therefore fails to state a § 1983 conspiracy claim. *See Iqbal*, 556 U.S. at 678 ("[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice").

Having thoroughly reviewed and liberally construed the second amended complaint, the Court concludes that plaintiff's allegations fail to state a claim upon which relief may be granted. Plaintiff is specific about the claims he wishes to bring, and it is apparent that the problems with the second amended complaint would not be cured by permitting plaintiff to file yet another amended pleading. The Court will therefore dismiss this action at this time, without prejudice, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). Nothing in this Memorandum and Order shall be construed as prohibiting plaintiff from bringing any *Heck*-barred claims should he later become able to demonstrate that his convictions have been reversed, expunged, declared invalid, or called into question by issuance of a writ of habeas corpus. Additionally, nothing in this Memorandum and Order should be construed as precluding plaintiff from seeking federal habeas corpus relief at the appropriate time, should he wish to do so.

Because the Court is dismissing this action, plaintiff's motion seeking the appointment of counsel (ECF No. 28), his "Motion to Order Alibi Witness Deposition of Kristi McEntee" (ECF No. 29), and his motion seeking a preliminary injunction (ECF No. 30) will be denied as moot.

Accordingly,

**IT IS HEREBY ORDERED** that this case is **DISMISSED** without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). A separate order of dismissal will be entered herewith.

**IT IS FURTHER ORDERED** that plaintiff's motion to appoint counsel (ECF No. 28) is **DENIED** as moot.

**IT IS FURTHER ORDERED** that plaintiff's Motion to Order Alibi Witness Deposition of Kristi McEntee (ECF No. 29) is **DENIED** as moot.

**IT IS FURTHER ORDERED** that plaintiff's motion seeking a preliminary injunction (ECF No. 30) is **DENIED** as moot.

Dated this 27th day of January, 2020.

AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE